**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-6411**

_____

STEPHEN LAMARCK ROBERTS,

Plaintiff - Appellant,

v.

MARK ENGELKE, Director of Food Service of Virginia Department of Corrections; JEFFERY B. KISER, Warden, Red Onion State Prison; SHANNON FULLER, Assistant Warden, Red Onion State Prison; JOSEPH WALTERS, Director of Virginia Department of Corrections; KEITH ALMARODE, Food Service Manager of Red Onion State Prison; JOHN GIBSON, Counselor of the Virginia Department of Corrections; HAROLD W. CLARKE, in his individual capacity,

Defendants - Appellees.

_____

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James P. Jones, Senior District Judge. (7:20-cv-00484-JPJ-PMS)

_____

Argued: May 5, 2026                                    Decided: July 7, 2026

_____

Before KING, WYNN, and THACKER, Circuit Judges.

_____

Affirmed in part, reversed in part, and vacated and remanded in part by published opinion. Judge Wynn wrote the opinion, in which Judge King and Judge Thacker joined.

_____

**ARGUED:** Katie Koesters, Nayeli Selkis, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant. Mikaela Austin Phillips, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** John J. Korzen, Director, M. Celeste Anderson, Student Counsel, Tomasz J.

Budzyn, Student Counsel, Alexis Hellner, Student Counsel, Maeve M. Hickey, Student Counsel, Appellate Advocacy Clinic, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant. Jason S. Miyares, Attorney General, Kevin M. Gallagher, Solicitor General, Graham K. Bryant, Principal Deputy Solicitor General, Rick W. Eberstadt, Deputy Solicitor General, Jessica X. Tong, John Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, for Appellees.

WYNN, Circuit Judge:

A prisoner asserting religious liberty claims has at least two arrows in his quiver: the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). But the RLUIPA arrow flies farther and strikes harder.

Here, inmate Stephen Roberts notified prison officials that, in order to follow the commands of his sincerely held religious beliefs, he needed to both fast during Ramadan and eat only food prepared according to Jewish Kashrut law. The prison claims it could not assemble such a diet in time for Ramadan in 2020—but it eventually complied a year later in time for Ramadan in 2021. Still, Roberts sued, alleging violations of the Constitution and RLUIPA and asking for injunctive, declaratory, and monetary relief.

For the most part, the district court properly dispensed with each of Roberts's claims on summary judgment. However, because the district court erred by failing to consider whether the prison officials' actions were lawfully justified under the circumstances, we remand for reconsideration of whether there is a genuine dispute as to whether the prison officials violated Roberts's right to free exercise.

## I.

### A.

Because the district court granted summary judgment to Defendants, we recite the facts in the light most favorable to Roberts, the nonmoving party.

Since 2005, Roberts has been a prisoner at Red Onion State Prison ("Red Onion"), which is operated by the Virginia Department of Corrections ("VDOC").

3

To meet prisoners' daily nutritional needs, a VDOC dietician crafts meal plans "consistent with nationally recommended allowances for basic nutrition and established basic daily servings." J.A. 125.[1] VDOC must also comply with state safety regulations, including processes to reduce foodborne illness, acceptable cooking and storage methods, and timing for serving.

Simultaneously, VDOC seeks to accommodate prisoners' religious dietary restrictions. Relevant to this matter, VDOC offers the Common Fare menu, which it asserts was "designed to be in compliance with Jewish and Muslim dietary laws." J.A. 121. Further, in response to litigation from a different prisoner, VDOC developed a separate Orthodox Jewish Kosher Diet ("OJKD") "for Jewish inmates whose beliefs require that without the active supervision of an Orthodox Rabbi, the food cannot be Kashrut." *Id.*

VDOC also allows prisoners to fast in observation of Ramadan or the Nation of Islam Month of Fasting. According to the VDOC Food Service Manual that was in effect for 2020, Red Onion accommodated such fasts by preparing four different menus: a Ramadan menu, a Common Fare Ramadan menu, a Month of Fast menu, and a Common Fare Month of Fast menu. These fasting menus offered non-OJKD meals that were served and eaten before dawn and after sunset. Fasting inmates also received a bagged meal they could keep in their living quarters after their evening meal, but, to avoid spoilage, inmates had to agree to consume or discard that meal within four hours of receiving it and complete a Four-Hour Rule Agreement to participate.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

Roberts is a Sunni Muslim. However, because he believes that "Islamic Dietary Laws . . . are analogous with . . . Orthodox Jewish requirements of the Kashrut," it is his sincerely held religious belief that his faith requires him to follow the Kashrut, which he further believes requires "an Orthodox Rabbi . . . to be actively supervising . . . all aspects of the Kosher diet."[2] J.A. 369.

His faith also requires that he fast during Ramadan. Observing Ramadan includes fasting from sunrise to sunset, meaning meals must be consumed before sunrise and after sunset every day for a month.

Roberts originally chose to participate in the Common Fare program under the belief that its menu aligned with his faith. Roberts was also able to receive a modified version of the Common Fare menu that allowed him to fast during Ramadan during the first several years of his confinement. However, in June 2019, Roberts requested to switch to the OJKD after hearing "through the prison's grapevine" that the OJKD had been developed in response to litigation alleging that the Common Fare diet was not strictly following Kashrut law. J.A. 191. His request did not include any reference to additional accommodations for Ramadan. Red Onion approved his request to switch to the OJKD on July 10, 2019.

On March 10, 2020, Red Onion sent inmates a memorandum announcing that Ramadan was estimated to start on April 23, 2020. That notice also reminded inmates that they needed to complete the Four-Hour Agreement by March 24 to participate in the fast.

---

[2] Defendants do not dispute the sincerity of Roberts's beliefs.

5

The same day, Roberts returned the Four-Hour Agreement but included a handwritten note that he wished to receive his OJKD meal during Ramadan.

VDOC claims that it was not prepared to provide an OJKD menu that also accommodated Ramadan because doing so would have required careful planning to ensure an additional OJKD meal could be bagged and consumed safely within four hours. VDOC also alleges that such a change also required consulting with the Muslim Chaplain Service of Virginia, as well as allowing "time for ordering and purchasing the necessary food items"—a process for which the VDOC Food Service Manual allots up to 90 days to complete. J.A. 131.

So VDOC informed Roberts that it would not be able to accommodate his request. Instead, it offered Roberts a choice: He could remain on the OJKD without fasting, or he could switch back to the Common Fare diet and observe Ramadan. However, if Roberts were to opt to receive the Common Fare diet during Ramadan, he would not be permitted to switch back to the OJKD diet for at least six months. Refusing to compromise his sincerely held religious beliefs, Roberts chose a third option by "sneaki[]ly saving [his OJKD] meals . . . during the daylight hours until sunset in an effort to fast." J.A. 194.

However, because the food had been sitting out for hours before Roberts could consume it, doing so made him quite ill. On three separate occasions, he developed food poisoning and needed to be treated by the prison medical team.

6

Months later, in anticipation of the 2021 Ramadan observance, VDOC developed a new variation of the OJKD that could accommodate Ramadan fasting.[3] Since 2021, Roberts has been able to observe Ramadan's fasting requirement while on the OJKD.

B.

In August 2020, Roberts (proceeding pro se) filed a complaint against various VDOC officials in their individual and official capacities.[4] For failing to accommodate his religious dietary requirements, he alleged a violation of RLUIPA, a violation of the Free Exercise Clause of the First Amendment, and a violation of the Equal Protection Clause of the Fourteenth Amendment.

In April 2021, Roberts amended his complaint to add an Establishment Clause claim under the First Amendment and to verify the complaint. His amended complaint asks for a declaratory judgment that Defendants violated his rights under the First Amendment and RLUIPA by forcing him "to choose between following the precepts of his religious beliefs and forfeiting governmental benefits." J.A. 198. It also asks for injunctive relief to make permanent his ability to participate in Ramadan fasting while on the OJKD. And it asks for compensatory and punitive damages.

---

[3] *See* Virginia Department of Corrections, *Food Service Manual Chapter 4*, at 9–10 (2023), available at https://vadoc.virginia.gov/files/operating-procedures/500/vadoc-op-500-1-c4.pdf [https://perma.cc/9F6H-9YVP]; *see also Gordon v. Schilling*, 937 F.3d 348, 353 n.6 (4th Cir. 2019) (taking judicial notice of VDOC operating procedure).

[4] In the original complaint, Defendants included Mark Engelke, Director of Food Service of VDOC; Jeffery Kiser, Red Onion's warden; Shannon Fuller, Red Onion's assistant warden; Harold Clarke, Director of VDOC; Keith Almarode, Red Onion's Food Service Manager; and John Gibson, Counselor of VDOC. Joseph Walters has since been substituted for Clarke as the Director of VDOC, though Clarke remains party to the suit in his individual capacity.

7

Roberts moved to compel the disclosure of certain VDOC Food Manual documents during discovery. However, the magistrate judge denied his motion.

Defendants then moved for summary judgment, which the district court granted on all claims.

The district court narrowed the issues significantly at the outset. First, it determined that Defendants were protected by Eleventh-Amendment immunity for all damages claims brought against them in their official capacities. *See Roberts v. Engelke*, No. 7:20-cv-484, 2022 WL 791653, at *5 (W.D. Va. Mar. 14, 2022). Next, it found that Roberts was barred from recovering monetary damages at all under RLUIPA. *Id.* Finally, it found that Roberts was barred from injunctive relief because VDOC's choice to create a new Ramadan-compliant OJKD diet beginning in 2021 rendered his claims moot. *Id.* at *5–6.

That left only Roberts's request for damages on his constitutional claims against the Defendants in their individual capacities. On those, the district court found that the Defendants were entitled to qualified immunity—on the First Amendment Free Exercise claim because it was not "clearly established . . . that a Sunni Muslim inmate's beliefs would require him to receive meals supervised by an Orthodox Jewish Rabbi as part of his Muslim Ramadan observance," and on the First Amendment Establishment Clause and Fourteenth Amendment Equal Protection Clause claims because there was no constitutional violation. *Id.* at *7–9.

Roberts timely appealed the magistrate judge's denial of the motion to compel discovery and the district court's grant of summary judgment. This Court appointed counsel for Roberts for purposes of this appeal.

8

II.

We review district court decisions on motions to compel discovery for abuse of discretion. *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). "In applying the abuse-of-discretion standard, we review the district court's factual conclusions for clear error and its legal conclusions de novo." *Id.*

"We review de novo a district court's decision to grant summary judgment, applying the same legal standards as the district court and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020).

III.

Roberts first argues that the magistrate judge erred in failing to compel production of information about the history of the VDOC Common Fare diet and relevant supporting documentation since Roberts's incarceration began in 2005.

"Parties may obtain discovery . . . that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance is not, on its own, a high bar," but "[p]roportionality requires courts to consider, among other things, 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Jordan*, 921 F.3d at 188–89 (quoting Fed. R. Civ. P. 26(b)(1)).

During discovery, Roberts served thirteen combined interrogatories and requests for production, including requests for information about the history of the VDOC Common Fare diet and relevant supporting documentation since Roberts's incarceration began in 2005. Defendants objected to some of those interrogatories, asserting that the request for

9

documentation about the last two decades of Common Fare policies was "overbroad and disproportional to this very limited case pertaining not to Common Fare but the [OJKD]." J.A. 317. Director Engelke also objected by noting he "was not Director of Food Service in 2005 and does not have knowledge of such or access to the documents requested." *Id.*

The magistrate judge denied Roberts's motion to compel, concluding that he had not "provided the court with any argument as to how the defendants' discovery responses are deficient" and that "the court's review of the discovery responses provided by the defendants . . . reveals the responses are sufficient." J.A. 328.

Roberts argues that was error. He asserts that his production requests were relevant to showing that VDOC "should have been aware of [his] religious dietary needs to maintain [his OJKD diet] during Ramadan" and began putting together a plan to make a Ramadan-compliant version of the OJKD diet "when [VDOC] created and implemented the [OJKD]" in 2019. J.A. 299.

We find no abuse of discretion in the magistrate judge's rejection of this relevance argument as too convoluted.

First, if the point is that VDOC was on notice as early as June 2019 that Roberts wanted to be on the OJKD, that fact is uncontested. Second, to the extent Roberts now argues that requesting the OJKD in June 2019 should have also put VDOC on notice that Roberts would need a *Ramadan-compliant* OJKD in March 2020, there is nothing about the history of the Common Fare diet dating back twenty years that would have any relevance to the timing of the unique OJKD-Ramadan request that Roberts expressly made in March 2020. Indeed, at oral argument, Roberts conceded that "it was about a month and

10

a half that [VDOC] would have had to accommodate this request." Oral Argument at 11:36–40, https://www.ca4.uscourts.gov/OAarchive/mp3/22-6411-20260505.mp3.

Discerning no abuse of discretion, we affirm the denial of the motion to compel.

IV.

Now, to the merits.

We first address some of the district court's preliminary rulings that significantly narrow the issues before us.

On appeal, Roberts does not dispute the district court's determination that Defendants were protected by sovereign immunity for all damages claims against them in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). And, despite briefing the issue originally, Roberts has now explicitly waived the issue of "whether damages can be recovered from defendants in their individual capacity under RLUIPA."[5] Dkt. No. 124 at 2–3.

We also affirm the district court's finding that Roberts's claims for injunctive and declaratory relief were moot.[6]

---

[5] Following oral argument, the Supreme Court also clarified that the Spending Clause of the Constitution does not allow RLUIPA to impose damages liability on state actors in their individual capacities. *Landor v. La. Dep't of Corr. & Pub. Safety*, No. 23-1197, 609 U.S. ----, 2026 WL 1791277, at *6 (U.S. June 23, 2026).

[6] The district court did not explicitly rule on Roberts's claims for declaratory relief. *See Roberts*, 2022 WL 791653, at *6 ("Accordingly, I will grant the defendants' Motion for Summary Judgment as to Roberts's claims for injunctive relief because such claims are moot. Therefore, Roberts's remaining claims are against the defendants in their individual capacities, seeking monetary damages under the First and Fourteenth Amendments."). However, our caselaw suggests that the mootness of injunctive and declaratory relief rise and fall together, even where claims for past damages move forward. *See Rendelman v.*

11

"We review the district court's mootness determination de novo. Moreover, we review a district court's jurisdictional findings of fact on any issues that are not intertwined with the facts central to the merits of the plaintiff's claims under the clearly erroneous standard of review." *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015) (cleaned up).

Under Article III of the Constitution, the federal judiciary is limited to hearing actual cases and controversies. *See* U.S. Const. art. III, § 2, cl. 1. But no case or controversy exists when a case becomes moot. That is, "the mootness doctrine recognizes that some intervening circumstances deprive the plaintiff of a personal stake in the outcome of the lawsuit, such that the action can no longer proceed." *Synopsys, Inc v. Risk Based Sec., Inc.*, 70 F.4th 759, 764 (4th Cir. 2023) (cleaned up).

The Supreme Court has held that "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000). Nevertheless, where a defendant voluntarily ceases the offending conduct, the suit is moot if it is "absolutely clear" that the violations cannot "reasonably be expected to recur." *Id.* at 193. The voluntary-cessation analysis "always requires a factual inquiry into the actual likelihood of recurrence of the offending behavior." *Eden, LLC v. Justice*, 36 F.4th 166, 172 (4th Cir. 2022) (quotation omitted).

---

*Rouse*, 569 F.3d 182, 186–87 (4th Cir. 2009). Applying our injunctive-relief analysis, we also affirm the district court's implicit finding that the claims for declaratory relief are moot, as well.

Here, Defendants submitted records of a formal policy change beginning in 2021 to establish a Ramadan-compliant OJKD, and Roberts concedes that he continues to receive the accommodation to this day. Still, Roberts argues that the fact that VDOC regularly updates its menus is evidence that it may simply change course again in the future and deprive him of an opportunity to eat an OJKD while observing Ramadan.

In *Grutzmacher v. Howard County*, we recognized that defendants seeking to show mootness based on voluntary cessation face a "heavy burden of persuading this Court that they will not revert to the challenged policies." *Grutzmacher v. Howard Cnty.*, 851 F.3d 332, 349 (4th Cir. 2017) (cleaned up). In that case, however, we concluded that the defendants had met their burden where they had adopted "revised policies [that] did not include any of the provisions [the p]laintiff challenged in the prior iterations of the policies"; a decisionmaker had "submitted a sworn affidavit" stating that he fully intended to operate under the new policies and did not intend to return to the prior policies; the defendants' "counsel declared at oral argument that" they had "no intent to reenact the offending policies"; and we could "discern no hint" from the record that the defendants had "any intention of reinstituting the prior policies." *Id.* (cleaned up).

The same is true here. VDOC explicitly and voluntarily updated its policy—indeed, as the district court noted, it made the changes long before the court issued any rulings on the case. *Roberts*, 2022 WL 791653, at *6. Director Engelke submitted an affidavit promising that "Muslim inmates currently receiving the [OJKD] will continue to receive the [OJKD] while participating in Ramadan." J.A. 124. Defendants repeated those assurances at oral argument. And, having reviewed the record in full, we also agree with

13

the district court's assessment that there was "no indication in the record that this policy change was reluctant or temporary," and that the evidence instead corroborated VDOC's explanation that it simply did not anticipate needing to fashion such an accommodation in time for Ramadan in 2020. *Roberts*, 2022 WL 791653, at *6. Because we detect "no hint" that VDOC has "any intention of reinstituting the prior policies," Roberts's claims for injunctive and declaratory relief are moot.[7] *Grutzmacher*, 851 F.3d at 349.

V.

So, what remains is somewhat narrow: Roberts's claims for damages against Defendants in their individual capacities for three different alleged constitutional violations. Those are (1) a Free Exercise claim under the First Amendment, (2) an Establishment Clause claim under the First Amendment, and (3) an Equal Protection Clause claim under the Fourteenth Amendment.

The district court disposed of each of these because it found that Defendants were due qualified immunity.

Government actors "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quotation omitted).

---

[7] Because we affirm the district court's finding that all claims for injunctive and declaratory relief are moot under Article III, we need not reach Defendants' alternative argument that Roberts's RLUIPA claims are moot under that statute's safe-harbor provision. *See* 42 U.S.C. § 2000cc-3(e).

While we affirm the district court's finding that Defendants are entitled to qualified immunity on Roberts's Establishment Clause and Equal Protection Clause claims, we reverse the district court's finding that Roberts's Free Exercise right to a diet consistent with his religious scruples was not clearly established and remand for reconsideration of whether, in this particular context, there was a constitutional violation.

A.

First, the Free Exercise claim.

The district court found that, while Defendants violated Roberts's rights under the Free Exercise Clause of the First Amendment, the unlawfulness of their conduct was not clearly established at the time. However, the district court applied the incorrect standard with regard to discerning a constitutional violation and held that right not to be clearly established only by defining the right more narrowly than our precedents permit.

1.

We first take up the question of whether Roberts's asserted right was clearly established at the time of the alleged violation. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 699 (4th Cir. 2018) ("We retain discretion to address the separate qualified immunity inquiries in the order of our choosing.").

On this prong of the qualified-immunity analysis, the district court stated, "I find no case law suggesting that it was clearly established in the Supreme Court, the Fourth Circuit, or the Supreme Court of Virginia in the spring of 2020 that a Sunni Muslim inmate's beliefs would require him to receive meals supervised by an Orthodox Jewish Rabbi as part of his Muslim Ramadan observance." *Roberts*, 2022 WL 791653, at *7.

15

We reverse that decision.

The district court erred as a matter of law by requiring Roberts to cite a case with identical facts. It is true that the Supreme Court has repeatedly instructed lower courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation omitted). However, "it is not required that the exact conduct has been found unconstitutional in a previous case," *Brockington v. Boykins*, 637 F.3d 503, 508 (4th Cir. 2011), "so long as the unlawfulness of the conduct is manifest under existing authority," *Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir. 1998). Indeed, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Strickland v. Halsey*, 638 F. App'x 179, 189 (4th Cir. 2015) (per curiam) (quotation omitted).

Applying that standard, we conclude that a prisoner who sincerely believes that he must observe both the Ramadan fast and the Kashrut has a clearly established right to observe those tenets simultaneously.

We have repeatedly held that a prisoner's "right to participate in Ramadan [is] clearly established," *Wall v. Wade*, 741 F.3d 492, 502 (4th Cir. 2014), and that "[u]nder both the Free Exercise Clause and RLUIPA . . . , a prisoner has a clearly established right to a diet consistent with his religious scruples, including proper food during Ramadan," *Lovelace v. Lee*, 472 F.3d 174, 198–99 (4th Cir. 2006) (cleaned up). Furthermore, the Supreme Court has also made clear that the Free Exercise Clause extends as much to the practices of mainline members of a faith as it does to "idiosyncratic" followers, because the Free Exercise Clause is "not limited to beliefs which are shared by all of the members

16

of a religious sect." *Holt v. Hobbs*, 574 U.S. 352, 362 (2015) (quotation omitted). Here, a diet consistent with Roberts's religious scruples, "including proper food during Ramadan," was a diet that complied with the Kashrut and that could be consumed during times compliant with the Ramadan fasting schedule.

Therefore, the district court erred to the extent it found that Roberts did not have a clearly established right to partake in a diet that complied with his sincerely held religious beliefs.[8]

2.

Though we hold that the right in question was clearly established in 2020, Defendants are still due qualified immunity if Roberts cannot show that, based on the facts surrounding *this particular accommodation request*, Defendants violated his constitutional rights. *See Wall*, 741 F.3d at 498 (explaining that a plaintiff must "substantiate the violation of a federal statutory or constitutional right").

On this prong, the district court failed to apply the correct test for violation of a prisoner's Free Exercise rights under the First Amendment. Thus, we vacate and remand that portion of its analysis.

---

[8] The district court's clearly established analysis focused solely on Roberts's prima facie case, without consideration of the *Turner* factors that we discuss in Section V.A.2. On appeal, Defendants argue that Roberts must identify a case on point that says not only that a prison needs to accommodate an inmate's religiously required diet, but also that it must do so on an expedited timeline, in the face of various resource constraints. But Defendants did not make that argument before the district court, and we decline to reach it here. *See In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) ("[A]bsent exceptional circumstances, we do not consider issues raised for the first time on appeal." (cleaned up)).

To understand where the district court went awry, it is first important to understand the relationship between the First Amendment and RLUIPA.

The First Amendment provides, in part, that the government "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I, cl. 1. In 1963, in *Sherbert v. Verner*, the Supreme Court interpreted the amendment to mean that if a generally applicable law imposes a substantial burden on the free exercise of a person's religion, that person could seek an exemption from the law unless it was justified by a compelling government interest. *Sherbert v. Verner*, 374 U.S. 398, 406 (1963).

But in 1990, the Supreme Court reversed course in *Employment Division v. Smith*, 494 U.S. 872 (1990). In that case, the plaintiffs were denied unemployment benefits after they were fired for ingesting peyote as part of their religious tradition. The Supreme Court declared that because the state's unemployment law was generally applicable, such burdens on religion were constitutional. *Id.* at 884–85.

Congress responded to *Smith* by passing the Religious Freedom Restoration Act of 1993 ("RFRA"). That law stated that even laws of general applicability require exemptions for religious exercise if they "substantially burden" a person's free exercise of religion. 42 U.S.C. § 2000bb-1(a). The law may only apply to that person if it survives strict scrutiny; that is, it is in furtherance of a compelling government interest, and it is the least restrictive means of furthering that interest. *Id.* § 2000bb-1(b).

Still, the Supreme Court later decided in *City of Boerne v. Flores* that RFRA could not extend to state and local governments under Section 5 of the Fourteenth Amendment.

18

*City of Boerne v. Flores*, 521 U.S. 507 (1997). So Congress responded again, this time by enacting RLUIPA in 2000. RLUIPA essentially applied RFRA's strict-scrutiny standard to state land-use regulations and to correctional institutions. *See* 42 U.S.C. § 2000cc(a)(1) (land use); *id.* § 2000cc-1(a) (correctional institutions).

In parallel to these developments, however, the Supreme Court also began to make clear that a prisoner's First Amendment protections are inherently more circumscribed than those of people who are not incarcerated.

In 1987, the Supreme Court noted that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). However, it also recognized that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Id.* (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). So, it fashioned "a lesser standard of scrutiny [for] determining the constitutionality of . . . prison rules." *Id.* at 81. That newly announced standard was that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. The Court set forth four factors for analyzing that question. *Id.* at 89–91; *see Lovelace*, 472 F.3d at 200.

But RLUIPA, which deals specifically with religious liberty and not with constitutional rights more generally, came after *Turner* and did not incorporate *Turner*'s allowance for constitutional impingements that are reasonably related to legitimate penological interests.

19

Rather, under RLUIPA, a prisoner must first "show that the prison's policies imposed a substantial burden on his exercise of sincerely held religious beliefs." *Richardson v. Clarke*, 52 F.4th 614, 622 (4th Cir. 2022) (quotation omitted). If he succeeds, "the government has the burden to show that its policy satisfies strict scrutiny: that is, the policies must represent the least restrictive means of furthering a compelling governmental interest." *Id.*

Therefore, RLUIPA "provides greater protection" for a prisoner's free-exercise rights than does the First Amendment. *Holt*, 574 U.S. at 361.

That brings us to the application to this case.

Here, the district court failed to apply a *Turner* analysis to Roberts's First Amendment claim. Its analysis was, in full:

> Roberts contends that his sincere Sunni Muslim beliefs require him to follow Kashrut dietary standards and to follow the Ramadan fasting schedule. The defendants do not deny that the Common Fare program in 2020 did not meet the requirements of Kashrut. Thus, taking Roberts's verified statements about his religious beliefs as true, as I must on summary judgment, I can only conclude that VDOC's failure to adjust the OJKD meal schedule to allow Roberts to consume that diet and follow the Ramadan fasting observance placed a substantial burden on his ability to practice his sincere Sunni Muslim religious dietary beliefs. Thus, he has defeated the first step of the defendants' qualified immunity defense.

*Roberts*, 2022 WL 791653, at *7.

Perhaps that may have been enough if Roberts's claim fell within RLUIPA. After all, once an inmate shows that a prison has substantially burdened his right to practice his religion, the next step in the RLUIPA analysis is asking whether the prison's policy can

20

clear the difficult hurdle of strict scrutiny. *See Richardson*, 52 F.4th at 622. But when considering an inmate's free-exercise claim under the *First Amendment*, a prison need only show that the free-exercise restriction was "reasonably adapted to achieving a legitimate penological objective" by applying the *Turner* factors. *Wall*, 741 F.3d at 499 (quotation omitted). The district court erred by failing to address the second part of the free-exercise analysis at all.

Defendants contend that we can nevertheless affirm. They ask that we apply the *Turner* factors for the first time on appeal, arguing that their failure to accommodate Roberts's religious diet in March 2020 was justified by resource constraints and the impracticability of devising a new menu within a matter of weeks during the early onset of the COVID-19 pandemic. For his part, Roberts argues that the prison could have easily accommodated his religious requirements by serving him two hot meals at the same time as those receiving hot meals on the Common Fare and one shelf-stable OJKD meal to consume later.

But *Turner* demands a fact-intensive inquiry. Because the district court did not fully evaluate the *Turner* factors in the first instance, we remand for reconsideration with instructions to evaluate whether Defendants' actions were reasonably related to a legitimate penological interest. *See Lovelace*, 472 F.3d at 200 n.9 ("The prison's rationale for the restrictions and any facts relevant to the *Turner* factors should be presented to the district court in the first instance.").

B.

Next, the Establishment Clause claim.

21

Roberts argues that Defendants violated the Establishment Clause based on "their refusal to accommodate" prisoners who, like him, were "on the OJKD" but had "different beliefs than those of an Orthodox Jewish individual." Opening Br. at 58.

At the threshold, Defendants argue that we should apply *Turner* to Roberts's Establishment Clause claim. We have recognized that while, generally speaking, "*Turner* establishes the standard for vindicating First Amendment rights in prison," "[t]he Supreme Court has never addressed whether or how *Turner* might apply to the Establishment Clause." *Lumumba v. Kiser*, 116 F.4th 269, 279–80, 280 n.6 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1189 (2025). We decline to reach that question here because we agree with the district court that Roberts cannot succeed in making even a prima facie showing for his Establishment Clause claim.

The Establishment Clause states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I, cl. 1. The Supreme Court has said that the Establishment Clause "mandates government neutrality between religions and subjects any state-sponsored denominational preference to strict scrutiny." *Cath. Charities Bureau, Inc. v. Wisc. Lab. & Indus. Rev. Comm'n*, 605 U.S. 238, 241 (2025). Said another way, a policy may not "confer[] [a] privileged status on any particular religious sect," nor may it "single[] out [any] bona fide faith for disadvantageous treatment." *Cutter v. Wilkinson*, 544 U.S. 709, 724 (2005).

However, "the plaintiff has the burden of proving a set of facts that would have historically been understood as an establishment of religion. That requires proving both a set of facts, like in all litigation, and proving that those facts align with a historically

22

disfavored establishmentarian practice." *Firewalker-Fields v. Lee*, 58 F.4th 104, 122 n.7 (4th Cir. 2023); *see also Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 536 (2022) ("An analysis focused on original meaning and history . . . has long represented the rule rather than some exception within the Court's Establishment Clause jurisprudence." (cleaned up)).

Here, the totality of Roberts's historical argument is a passing reference to the Supreme Court's holding in *Marsh v. Chambers* that an opening prayer in legislative sessions must not "proselytize or advance any one, or . . . disparage any other, faith or belief." *See* Opening Br. at 57–58 (quoting *Marsh v. Chambers*, 463 U.S. 783, 794–95 (1983)).

But modern Establishment Clause jurisprudence demands far more. Roberts must now proactively enter into the record historical evidence to prove that a prison's failure to accommodate a specific religious diet "would have historically been understood as an establishment of religion." *Firewalker-Fields*, 58 F.4th at 122 n.7 (contrasting this burden with Second Amendment claims, in which "the burden falls on the defendant" to establish a historical exception to the right to bear arms). Because he fails to do so, his claim necessarily fails.[9]

Accordingly, we affirm the district court's grant of summary judgment on this claim.

---

[9] Roberts also fails to respond to Defendants' alternative argument that there was no clearly established *Establishment Clause* right to a particular religious diet in March 2020.

23

C.

Finally, the Equal Protection Clause claim.

The district court determined that Defendants were due qualified immunity on the Equal Protection Clause claim because Roberts could not successfully show any violation of a relevant constitutional right. We agree and thus affirm.

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. That clause "does not take from the States all power of classification but keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (cleaned up).

To succeed on an Equal Protection Clause claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. *Id.* "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* And in the prison context, a prisoner faces the additional hurdle of the *Turner* test even if he succeeds on a prima facie Equal Protection showing. *Id.* at 655.

The district court determined that Roberts's claim failed at the outset because Roberts "has not shown that he was similarly situated in all relevant respects to the Orthodox Jewish inmate for whom VDOC designed the OJKD program in 2019 based on the facts of a particular lawsuit." *Roberts*, 2022 WL 791653, at *9. We agree.

24

Roberts argues that he was similarly situated to others on the OJKD, but that he was treated differently because he was a Muslim instead of an Orthodox Jew—analogizing his case to our prior holding in *Morrison*.

In *Morrison*, we faced a claim from a prisoner who was denied a request to obtain Native American spiritual items because he was not himself of Native American heritage. *Morrison*, 239 F.3d at 651. We held that such a policy violated the Equal Protection Clause because the prison had discriminated on the basis of race; that is, among similarly situated inmates who all professed a sincerely held religious belief in Native American spirituality, the prison only accommodated those of a certain racial background. *Id.* at 657.

But this case is not *Morrison*. Here, all prisoners who expressed a sincerely held religious belief that they needed an OJKD menu were able to receive it—regardless of race or religion. Similarly, all those who expressed a sincerely held religious belief that they needed to fast during Ramadan were permitted to do so—regardless of race or religion. It is true that Roberts, as someone on the OJKD, was not able to observe Ramadan. But that meant that he was no longer similarly situated, in either direction.

Indeed, the record shows that there was at least one other person truly similarly situated to Roberts: Marquise Perry, who had also requested simultaneous accommodations for the OJKD and Ramadan. But he, too, was denied the accommodation, for the same reasons the prison provided to Roberts.

Because Roberts was treated no differently than those similarly situated to him, the district court was correct to find that Roberts could not succeed on an Equal Protection Clause claim.

25

VI.

Overall, then, we affirm the district court's judgment as to all but a sliver of its analysis. On remand, Roberts's only surviving claim is his Free Exercise claim for damages against Defendants in their individual capacities. Though we hold that Roberts had a clearly established right to a diet consistent with his religious scruples, we remand to the district court to determine whether, in this case, the prison's failure to accommodate Roberts's 2020 request was reasonably related to legitimate penological interests under *Turner*.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND VACATED AND REMANDED IN PART*